CRAIG v. WRIGHT.

1. LICENSES—LIMITATION OF ACTIONS—BLUE SKY LAW.
   Purchasers of interests in a tract of real estate, allegedly sold by
   defendants in violation of the blue sky law, *held,* not entitled
   to recover purchase price, even if in violation of the statute,
   where action was not brought until about five years after sales
   were made (2 Comp. Laws 1929, § 9788).

2. APPEAL AND ERROR—PLEADING—AMENDMENT—LIMITATION OF AC-
   TIONS.
   On appeal from decree dismissing bill for accounting against
   promoters by purchasers of interests in a tract of real estate
   and who first raised claim of violation of blue sky law in the
   making of such sales in their reply to defendant's answer but
   did not urge same in trial court, amendment to answer should
   be allowed in Supreme Court, if necessary to set up defense of
   special statute of limitations (2 Comp. Laws 1929, § 9788).

3. LICENSES—TENDER—BLUE SKY LAW.
   The blue sky law makes a tender of the securities sold in viola-
   tion thereof a condition precedent to recovery of the purchase
   price (2 Comp. Laws 1929, § 9788).

4. FRAUD—FINDING OF COURT—RECORD.
   In suit by some purchasers of interests in a tract of real estate
   against promoters, record *held,* to disclose no justification for
   disturbing finding of trial judge that no fraud was committed
   in representations as to value or commissions.

5. EQUITY—JURISDICTION—MULTIPLICITY OF SUITS.
   Existence of a number of actions at law against the same de-
   fendants, each for a separate tort, does not constitute such
   multiplicity of suits as confers equitable jurisdiction.

Appeal from Huron; George (Fred W.), J.,
presiding. Submitted January 11, 1935. (Docket
No. 75, Calendar No. 37,903.) Decided April 8,
1935.

Bill by Grace E. Craig and others against Fred L. Wright and wife for an accounting and other relief. Bill dismissed. Plaintiff Pangborn and others appeal. Affirmed.

*Leibrand & Leibrand,* for appellants.

*Paul Woodworth* and *Alfred H. Sauer,* for defendants.

NORTH, J. This is a suit in chancery brought by 34 plaintiffs. Each claims the right to recover on the ground that through fraud and misrepresentation he was induced by defendants to invest money incident to purchasing between 700 and 800 acres of land in Presque Isle county bordering on the shore of Lake Huron and extending inland along Ocqueoc river to a lake of the same name. The promoters proposed either to develop this property as a resort community or to resell it at an advanced price to other parties contemplating such development. There were upwards of 80 subscribers to the enterprise. Defendant Fred L. Wright, engaged in the real estate and insurance business at Bad Axe, Michigan, undertook the consummation of this transaction and approached the respective plaintiffs in regard to investing therein. He represented to those whom he sought to interest that purchase of the land, on which he then had an option, required the investment of $35,000 in cash and giving back a purchase price mortgage of $55,000. For the purpose of consummating this purchase the following plan was adopted by Wright. He divided the $35,000 necessary to procure title into 140 units or parts of $250 each; and at that price sold to each of plaintiffs the right to take one or more corresponding

units in the property. Some units or shares were sold to Mr. and Mrs. White from whom Wright purchased the land, the amount of such sales being applied on the purchase price. The written instrument signed by the respective plaintiffs incident to becoming parties to this transaction recited that under the terms of his option to purchase the property at the price and on the condition above noted defendant Fred L. Wright was:

"To receive the sum of five thousand dollars (as claimed by plaintiffs or fifteen thousand dollars as claimed by defendants) out of said consideration for his services, * * * and if said Wright deems it best for us so to do he and two others to be selected by him may organize a holding company to take title to said property for us and we will accept evidence of ownership [of] our proportionate interest therein and for our rights in and to said property.

"Therefore, the persons hereinafter named as beneficiaries being desirous of obtaining an interest in said land in the net proceeds and profits to be obtained from the management, operation and sale thereof to that end, have contributed to said Fred L. Wright, the sum set after the name of each hereinafter and the amount of their interest in the land as set forth opposite the name of the purchaser."

The respective signatures of the subscribers are followed by fractions indicating the interest taken by each, as 1/140, 1/70, 1/35, etc. This instrument, designated in the record as exhibit N, contained a description of the lands to be purchased. After the subscriptions were obtained and in October, 1927, Mr. Wright and three others perfected the corporate organization of the Ocqueoc Land Company. It was capitalized at $35,000, divided into 140 shares of non-par stock "paid in property." The property

here referred to was the real estate purchased incident to this transaction, except that one parcel of 80 acres was not included. A total of 10 shares of stock was issued to Wright's associates and 130 shares were issued to him as trustee. The stock so taken by Wright was reissued in proportionate amounts to the respective subscribers of the instrument first above noted. At a meeting held in November, 1927, officers and directors of the corporation were elected, Mr. Wright being selected as president. And at this time Wright's option or contract was assigned to the corporation, the owners of the land were paid, the deed given to the corporation and the purchase price mortgage given back.

It plainly appears from the record that shortly after the incorporation of this company there was a decided slump in real estate values. This resulted in there being practically no market for or inducement to develop resort property. Without reciting details, it is sufficient to say that the venture has apparently resulted in a total loss. In August, 1932, this suit was started against Mr. and Mrs. Wright. The specific prayer for relief is:

"That the defendants come to an accounting with these plaintiffs and that the court in its decree ascertain the amount to be paid by the defendants to the respective plaintiffs herein."

The bill is filed against Mrs. Wright on the theory that she conspired with her husband to perpetrate the alleged fraud. Plaintiffs' brief asserts a right to relief on the following grounds:

(1) That defendants violated the so-called blue sky law. 2 Comp. Laws 1929, § 9769 *et seq.*

(2) That defendants falsely represented that the value of the land (on resale after development) was

$600,000; that it was a bargain at $90,000 and could be resold at a large profit; that defendants had purchasers ready to buy the property at a price which would net a large profit; and that the $35,000 secured in the manner hereinbefore indicated was all to be used ''as a down payment for the purchase price of the land.''

(3) That defendants fraudulently concealed·from plaintiffs that defendants were making a large profit ''out of the promotion of the corporation.''

There are other allegations of fraud, but they are germane to the foregoing and need not be detailed. Both in their pleadings and in their testimony defendants denied the alleged fraud. After full hearing in the circuit court, the relief sought was denied and decree entered dismissing the bill of complaint. Nineteen of the 34 plaintiffs have appealed.

Assuming, but not holding, that defendants violated the so-called blue sky law, plaintiffs are not for that reason entitled to recover. The statute providing that a sale made in violation of the statute ''shall be voidable at the election of the purchaser,'' contains the following:

''*Provided*, That no action shall be brought for the recovery of the purchase price after two years from the date of such sale or contract for sale.'' 2 Comp. Laws 1929, § 9788.

These transactions occurred in 1927, but suit was not instituted until August 13, 1932. See, also, *Bigelow* v. *Otis*, 267 Mich. 409. It might be urged in behalf of appellants that the statutory limitation within which suit may be brought was not pleaded in defendants' answer. On the other hand it may also be noted that plaintiffs in their bill of complaint have not claimed a right to recover by reason

of violation of this statute. Instead, violation of the statute is first mentioned in plaintiffs' reply to defendants' answer. So far as disclosed by the record, this ground of recovery does not seem to have been urged in the circuit court. Except in a most indirect manner it is not referred to in appellants' reasons assigned in support of this appeal. Under the circumstances of this case, were it considered necessary, an amendment to defendants' answer should be allowed in this court to make this obvious defense available. Court Rule No. 72 (1933). It may also be noted that the record does not disclose that appellants at any time prior to filing their brief in this court tendered return of the stock purchased. The statute makes tender of the stock a condition precedent to recovery. 2 Comp. Laws 1929, § 9788.

We have made careful review of the record, including consideration of original exhibits, for the purpose of ascertaining whether the circuit judge was in error in holding that plaintiffs failed to establish actionable fraud. There is a decided conflict in the testimony on this major phase of the case. Credibility of the respective witnesses is a matter of controlling importance. The trial judge had the distinct advantage of having the testimony taken in his presence. We are much impressed with his observation that substantially six years intervened between the time of these alleged fraudulent transactions and the hearing in court; and that some of the plaintiffs, because they failed to remember having done so, denied signing instruments which they unquestionably did sign. There was the further element of the peculiar personal interest that each of these numerous plaintiffs had in the outcome of

the case. No testimony was offered tending to establish the charge of conspiracy made against Mrs. Wright. On the contrary, the undisputed testimony is that she had no information concerning the details of the alleged fraudulent transaction and was in no way active in consummating such transactions.

The most perplexing issue arises from alteration of a portion of exhibit N above quoted. As originally typewritten it provided Wright was to have as compensation for his services "five thousand dollars." The word "five" has been altered by pencil. Defendants assert there was error in the original typing and the word "five" was changed to "fifteen" before plaintiffs signed the instrument and that plaintiffs knew Wright was to be compensated accordingly. There was direct conflict of testimony on this issue. The circuit judge heard and saw the witnesses and had the altered instrument before him. We quote briefly from the opinion filed by him:

"Therefore, in view of all the testimony, the court is of the opinion that there was no fraud on the part of defendants in representing the property as a splendid investment. * * * Very few of the plaintiffs remembered signing any paper in reference to this matter, but when shown the instrument (exhibit N) recalled seeing the pages other than Nos. one and two, and others testified that page one stated that defendants should receive $5,000 and not $15,000. Now, the fact that a number of the plaintiffs did not remember signing anything is nothing strange, in view of the fact that years elapsed since such instrument was prepared to the trial of the matters herein on their merits. * * * The instrument was very poorly prepared and evidenced other al-

terations, but there is direct proof that the word 'fifteen' appeared thereon at the time it was used for the purposes intended. * * * Based upon the entire evidence in the case, it is the opinion of the court that what really happened in this matter was that, unfortunately, before this enterprise could be put in working condition, the property subdivided and placed upon the market, after which it would have resulted in a profitable investment for the plaintiffs, there ushered in such a general financial depression that over night valuations of property, both real and personal, crumbled. * * * It is firmly the opinion of the court that had it not been for this serious depression no such lawsuit would have been instituted. I find no fraud or false representations on the part of the defendants.''

Our review of this record on appeal does not disclose justification for disturbing the decree of the trial court.

While the question is not raised and therefore we do not rest decision thereon, in order that it may not be a misleading precedent, we note that this suit is improperly brought in equity. The sole relief sought, as stated in appellants' brief, is:

''The relief granted should be to decree the amount of money paid by the respective appellants both for the subscription and purchase of the original stock and the amount subsequently paid for assessments together with five per cent. interest from the time of payment to the date of the decree.''

Each of these plaintiffs had a complete and adequate remedy at law for the alleged fraud. Each complains of a separate tort. There is no justification for bundling them together in one suit in equity.

*Dutton* v. *A. W. Wallace & Co.,* 242 Mich. 481; *Salisbury* v. *City of Detroit,* 258 Mich. 235.

The decree entered in the circuit court is affirmed, with costs to appellees.

Potter, C. J., and Nelson Sharpe, Fead, Wiest, Butzel, Bushnell, and Edward M. Sharpe, JJ., concurred.